2003 WY 49

**TPJ, a minor, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. C–01–3.**

Supreme Court of Wyoming.

April 16, 2003.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Appellant.

Hoke MacMillan, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, and Tari L. Elam, Student Intern, of the Prosecution Assistance Program, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶1] The Juvenile Court of the Ninth Judicial District adjudicated TPJ, age 16, to be delinquent following his admission of committing numerous acts of burglary. Following the adjudication hearing, at a later restitution hearing the juvenile court ordered TPJ to pay a total of $1,964.59 as restitution to the victims of his delinquent acts of burglary. The restitution amount included $41.59 as the cost of a car alarm which one of TPJ's victims purchased and installed in her car after TPJ's burglary of her car and $300.72 as the cost of repair to a garage door allegedly damaged during TPJ's burglary of another victim's residence. TPJ challenged these particular costs at the restitution hearing and renews that challenge on appeal. As for the cost of the car alarm, TPJ asserts that it is not authorized under the statutory language "any damage or loss caused by the

child's wrongful act." Wyo. Stat. Ann. § 14–6–247(a)(v) (LexisNexis 2001). As for the cost of the garage door repair, TPJ asserts that the State failed to prove by a preponderance of the evidence that he damaged the garage door.

[¶ 2] Although the State counters TPJ's challenge on its merits, it first contends that TPJ's notice of appeal is both defective and untimely filed. As we shall explain below, we hold that TPJ's appeal is neither defective nor untimely; the relevant statutory provision of the Juvenile Justice Act does not authorize an award of restitution for the cost of the car alarm purchased and installed by the victim of a delinquent act after the commission of that act; the State's evidentiary standard as to restitution under that relevant statutory provision is a preponderance standard; and, applying that evidentiary standard, the State's proof as to restitution for the garage door repair satisfied that standard. Consequently, we affirm the order of restitution with respect to the cost of the garage door repair and reverse the order of restitution with respect to the cost of the car alarm.

## ISSUES

[¶ 3] TPJ presents the following issue for our review:

I. Did the district court abuse its discretion by ordering the appellant to pay restitution for a car alarm and alleged damage to a garage door?

The State contends that two issues are present in this appeal:

1. Does the defective and untimely notice of appeal deprive this court of jurisdiction to consider this appeal?

2. Did the juvenile court abuse its discretion in ordering appellant to pay restitution for the cost of a car alarm and for damage done to a garage door?

## FACTS

[¶ 4] The initial hearing upon the specific allegations in the delinquency petition filed by the county and prosecuting attorney, as authorized by Wyo. Stat. Ann. § 14–6–226, was held March 29, 2001. TPJ admitted committing numerous acts of burglary, including those involving the Brent Galles residence, where a garage door was allegedly damaged, and a car owned by Barbara Smith, who later purchased a car alarm, and provided a factual basis to support his admissions. Following TPJ's admission, the juvenile court broached the subject of disposition.

[¶ 5] The State expressed hesitancy in proceeding in the initial hearing with disposition because it had "no idea what the restitutional figure is." The juvenile court then expressed the desire to proceed with disposition without having the restitution amounts, subject to TPJ's and his counsel's consent to proceed and subject to the State's supplying those amounts to TPJ and his counsel within twenty days. The juvenile court required TPJ and his counsel to make written objections, if any, within fifteen days after the State supplied the amounts to them. All agreed to the juvenile court's proposed procedure.

[¶ 6] The juvenile court then received the State's recommendation for disposition and comments about that recommendation from others present, including TPJ and his counsel. The juvenile probation coordinator, Teri Van Etten, who had prepared the dispositional report, TPJ's mother and grandmother, and TPJ's uncle were also present. Next, the juvenile court announced its disposition which included, among other matters, TPJ's placement at the Wyoming Boy's School for an indeterminate period of time.

[¶ 7] Before adjourning the hearing, the juvenile court instructed Ms. Van Etten to acquire and deliver the restitution information to the county attorney. Following the initial hearing, the juvenile court entered on April 2, 2001, the Order Following Initial Hearing, approved as to form by the county attorney, TPJ's counsel, and Ms. Van Etten, which order expressly included a provision addressing the court's requirement with respect to the restitution information.

[¶ 8] In April 2001, the county attorney timely provided TPJ's counsel with the required restitution information which included each victim's name and address, property lost or damaged and the amounts sought in

restitution for each victim. TPJ's counsel timely objected in writing to certain items contained therein. Not until August 3, 2001, however, did the county attorney move in writing for a restitution hearing to resolve TPJ's objections. The juvenile court scheduled that hearing for August 22, 2001. The hearing took place as scheduled. At the hearing, the juvenile court took evidence and heard argument from counsel concerning Barbara Smith's purchase and installation of a car alarm and the estimated cost of Brent Galles' garage door repair.

[¶ 9] At the conclusion of the hearing, the juvenile court announced its decision, ordering TPJ to pay a total of $1,964.59 as restitution, which included the amounts of $41.59 as the cost of the car alarm and $300.72 as the cost of garage door repair. This appeal followed.

## DISCUSSION

*Standard of Review*

[¶ 10] Our standard of review of restitution orders is limited to a search for procedural error or a clear abuse of discretion. *Alcaraz v. State,* 2002 WY 57, ¶ 5, 44 P.3d 68, ¶ 5 (Wyo.2002). We will not find an abuse of discretion if sufficient evidence shows a reasonable basis for estimating the loss. *Id.* "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.*

[¶ 11] TPJ's first issue presents a question of statutory interpretation, and we look first to finding the answer in the language of these provisions. "Determining the lawmakers' intent is our primary focus when we interpret statutes. Initially, we make an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe together all parts of the statutes *in pari materia,* giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. We will not construe statutes in a manner which renders any

portion meaningless or produces absurd results." *In re WJH,* 2001 WY 54, ¶ 7, 24 P.3d 1147, ¶ 7 (Wyo.2001).

[¶ 12] In considering his second issue, we see that in his reply brief, TPJ agrees with the State that in criminal cases we review whether the amount of restitution was proved by a preponderance of the evidence and that burden of proof should be applied in juvenile restitution cases. We agree and hold that is the burden of proof by which we review whether sufficient evidence proved the amount of damages to the garage door. *See Renfro v. State,* 785 P.2d 491, 493 (Wyo.1990).

[¶ 13] The State's issue that the appeal was untimely is a jurisdictional challenge. To invoke appellate jurisdiction, appeals must be filed no later than thirty days after the district court enters its final order. *In re Interest of BW,* 12 P.3d 675, 677 (Wyo. 2000); W.R.A.P. 2.01. The timely filing of a notice of appeal is jurisdictional. *Holmquist v. State,* 902 P.2d 217 (Wyo.1995). "A late filing of an appeal results in an incurable jurisdictional defect, leaving this Court with no authority to resolve the case." *Id.* at 217–18.

*The Appeal Is Neither Defective Nor Untimely*

[¶ 14] The juvenile court's Order Following Restitutional Hearing was entered September 4, 2001. One week later, on September 11, 2001, TPJ's counsel filed a notice of appeal giving notice of the intention to appeal the "Judgment and Sentence of the Court rendered on the 22nd day of August, 2001, by the Honorable Nancy Guthrie, District Judge, Ninth Judicial District."

[¶ 15] Accompanying this notice was a copy of the juvenile court's order following the restitutional hearing referenced above. The appellate proceeding progressed in normal course, with the parties submitting the case to this Court on written briefs. As earlier mentioned, although the State in its brief counters on the merits TPJ's enumerated errors with respect to the restitution ordered for Smith's car alarm and Galles' garage door repair, the State first contends

that TPJ's notice of appeal is defective and untimely filed. If the State's contentions are correct, the State reasons, then this Court lacks jurisdiction over this appeal.

[¶ 16] The State's contention that the notice of appeal is defective proceeds on two bases. First, focusing on the wording in the notice of appeal that references "the Judgment and Sentence of the court rendered on" August 22, 2001, the State asserts "[t]here is no judgment and sentence in juvenile cases.... Accordingly, there was no judgment and sentence in this case to appeal from." Second, although conceding that "the tenor of [TPJ's appellate brief] ... strongly indicates that it was the Order Following Restitutional Hearing which he wished to contest in this Court," the State condemns TPJ's notice of appeal for "fail[ing] to identify the juvenile court's Order Following Restitutional Hearing, which was entered September 4, 2001."

[¶ 17] TPJ's reply brief addresses the State's contention that the notice of appeal is defective. TPJ correctly points out that an express provision of the Juvenile Justice Act authorizes a juvenile to appeal "any final order, judgment or decree of the juvenile court ...." Wyo. Stat. Ann. § 14–6–233 (LexisNexis 2001). Identifying the crux of the State's contention to be that "TPJ's counsel did not correctly type the name of the hearing and order" in the notice of appeal, TPJ asserts that his counsel correctly identified in the notice of appeal the object of the appeal as the juvenile court's order rendered August 22, 2001, and also attached to that notice of appeal a copy of that juvenile court's order following restitutional hearing. Asserting that it is clear what TPJ was appealing, TPJ protests that for one to conclude otherwise is to put form over substance. We agree with TPJ's position and hold that the notice of appeal is not defective.

[¶ 18] The State's contention that the notice of appeal is untimely filed relies upon *In re Interest of BW*, 12 P.3d 675 (Wyo.2000), which the State contends is controlling. According to the State, in *BW*, as here, the juvenile court left open the amount of restitution when it entered the dispositional order and the juvenile did not appeal the dispositional order. In *BW*, according to the State, the juvenile court fixed the amount of restitution three years later; BW appealed, and this Court held that the appeal was untimely, and dismissed the appeal. *Id.* at 677.

[¶ 19] TPJ addresses the untimeliness issues in his reply brief. Confronting the State's reliance on *BW*, TPJ distinguishes the facts in that case from the facts in his case. He correctly points out that in *BW*, unlike in his case, in the initial hearing the juvenile court in fact ordered restitution in an amount to be determined after the victim of BW's sexual assault had received counseling and medical care. *Id.* We also note that in *BW*, unlike here, BW's legal contention was that the juvenile court lacked statutory authority to delay setting restitution. *Id.* at 676. We find that TPJ's analysis of *BW* is correct. In that case, we found that, unlike here, the juvenile court in the dispositional phase had "entered an open-ended restitution order from which no appeal had been taken." *Id.* at 677. Here, in contrast to *BW*, the juvenile court, with the consent of both the State and TPJ and his counsel, reserved the restitutional order to a later time. When the juvenile court later held the restitution hearing and entered its final order on restitution, TPJ timely appealed that final order. W.R.A.P. 2.01. We hold that TPJ's notice of appeal is timely.

*The Applicable Statutory Provision Does Not Permit Restitution For Car Alarm*

[¶ 20] We now turn to TPJ's contention that the cost of Smith's car alarm, which she purchased and installed after he burglarized her car, is not authorized under the statutory language "any damage or loss caused by the child's wrongful act." § 14–6–247(a)(v). The relevant part of that statute provides:

(a) For a child at any sanction level, the juvenile court may:

\* \* \* \*

(v) Require the child and his parents or guardian to make restitution for *any damage or loss caused by the child's wrongful act,* except that the liability of

the parent or guardian shall not exceed the limit established by W.S. 14–2–203[.]

*Id.* (emphasis added).

[¶ 21] TPJ contends that the statutory language does not cover a victim's post-wrongful act purchase of a car alarm to be installed to prevent future car burglaries and not to replace an existing car alarm that was damaged or stolen during the commission of the juvenile's wrongful act in question. He contends that Smith's car was not equipped with a car alarm at the time of TPJ's wrongful act of burglarizing her car and TPJ did not damage or steal a car alarm in Smith's car when he committed the wrongful act of burglarizing Smith's car.

[¶ 22] TPJ asserts that the facts of his case most resemble the facts in *Alcaraz v. State,* 2002 WY 57, 44 P.3d 68 (Wyo.2002). There the victim store owner purchased a surveillance camera system because someone was stealing money from the store during hours when it was closed and the system identified Alcaraz as the thief. *Id.* at 70. This Court reversed the district court's restitution order which ordered Alcaraz to pay for the system and remanded with directions that the district court make a reasonable apportionment of the system cost between Alcaraz and the store owner. *Id.* at 73. This Court reasoned that Alcaraz should not pay for the system, but only a reasonable proportion, because the store owner realized future benefits from the system, beyond those benefits realized by apprehending Alcaraz. *Id.* TPJ says Smith will realize no benefits from the car alarm associated with his apprehension because he was apprehended without her having a car alarm; but Smith will realize future benefits from the car alarm in the form of preventing/thwarting possible future car break-ins by other burglars.

[¶ 23] According to the State, TPJ misconceives the nature of the loss suffered by Barbara Smith as a direct consequence of TPJ's actions, and the State argues that although Smith bought the car alarm after TPJ's wrongful act, she bought it because that wrongful act made Smith insecure and afraid that her car would be broken into again. Therefore, reasons the State, her fear, which motivated her to buy the car alarm, was a direct result of TPJ's wrongful act; his wrongful act caused her fear, and to alleviate it, she bought the alarm, and the juvenile court properly considered that buying the car alarm was equivalent to "damage or loss" under the statute.

[¶ 24] The juvenile court held that TPJ's wrongful act was "the direct cause for [Smith's] purchasing a car alarm," relying on *Dreiman v. State,* 825 P.2d 758, 764 (Wyo. 1992), a criminal burglary case in which the defendant paid restitution under Wyo. Stat. Ann. § 7–9–103 for the victim's expense in changing locks to her residence which the defendant had earlier burglarized. The State contends that an evident analogy exists between *Dreiman* and TPJ's juvenile case: in each case the victim's fear caused by the defendant's criminal act motivated the victim to incur expense.

[¶ 25] The State correctly states that proceedings under the Juvenile Justice Act are not criminal, but are special proceedings. *BW,* 12 P.3d at 677. The proceedings are equitable and not punitive to accomplish the purpose of providing "treatment, training and rehabilitation" for children, and to "provide for the care, the protection and the wholesome moral, mental and physical development of children coming within its provisions." Wyo. Stat. Ann. § 14–6–201(c)(ii)(C) and (c)(iii) (LexisNexis 2001); *see also WJH,* ¶¶ 9, 10. Accordingly, statutes providing for the care and discipline of juvenile delinquents are generally entitled to a liberal effect and a practical construction in favor of the child's welfare. *WJH,* ¶¶ 7, 8. The plain language of the statute, however, still controls our search for the legislative intent when it used the term "restitution for *any damage or loss caused by the child's wrongful act.*" *Id.*

[¶ 26] Plainly, the statute limits the amount of restitution to the damages or losses caused by the juvenile's wrongful act and does not expressly extend to reimbursement of security devices added by the victim after the commission of the crime that will benefit the victim in the future. In *Alcaraz,* we determined that restitution should be ordered to compensate for legally recognized losses that directly resulted from the criminal act. *Alcaraz,* ¶ 14. To comply with this

rule in that case, the district court was required to distinguish between those damages that would compensate the victim for monetary losses and the benefits that would continue to inure to the victim and, thus, could not be subject to restitution lest the victim gain a windfall. *Id.* By requiring there to be a direct causal connection between the juvenile's criminal act and the damages or losses incurred, we see that the car alarm was purchased after TPJ's burglary not because he stole or damaged one from the car, but for the future benefit to the victim of preventing other burglaries. Using *Alcaraz'* analysis, we hold that the car alarm purchase was not caused by TPJ's criminal act, and we hold that the juvenile court abused its discretion in ordering restitution for reimbursement to Ms. Smith for the car alarm.

### The Damage to the Garage Door Was Proved by Sufficient Evidence

[¶ 27] TPJ contends that the only evidence presented to the juvenile court was hearsay testimony by Irene Martinez, the victim/witness coordinator, that Mr. Galles had told her that the damage was not present before he and his family left for the weekend. The State contends that the juvenile court had TPJ's admissions that he and a friend had broken into the garage and evidence showing that it was likely that whoever broke into the garage had damaged the door, and the juvenile court found TPJ and his friend jointly and severally liable for the damages caused by their burglaries. An estimate for repairing the door was presented to the juvenile court, and based on the circumstantial evidence, the juvenile court had sufficient evidence to find that TPJ had damaged the door during the burglary in the amount shown by the repair estimate and did not abuse its discretion in ordering restitution. We agree with this assessment and hold that the juvenile court did not abuse its discretion.

[¶ 28] We affirm the order of restitution with respect for the cost of the garage door repair and reverse the order of restitution with respect to the cost of the car alarm.