# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 29

OCTOBER TERM, A.D. 2016

*March 9, 2017*

ALEX JORDAN VAUGHN,

**Appellant**
**(Defendant),**

**v.**

S-16-0169

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
> Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General; John A. Brodie, Assistant Attorney General.  Argument by Mr. Brodie.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]     Appellant Alex J. Vaughn was adjudicated a delinquent juvenile for committing a serious sexual offense that required him to register as an offender under the Wyoming Sexual Offender Registration Act (WSORA).  He subsequently failed to report changes in his address as required, and pled guilty to two felony counts for failing to do so.  His plea was conditional and allowed him to appeal his convictions on constitutional grounds.  We affirm.

## ISSUES

[¶2]     1.  Is Wyo. Stat. Ann. § 7-19-301(a)(iii) of the WSORA unconstitutional as applied to Appellant because it creates an irreconcilable conflict with Wyoming's Juvenile Justice Act (WJJA), Wyo. Stat. Ann. § 14-6-201 *et seq.*?

2.  Does Wyo. Stat. Ann. § 7-19-301(a)(iii) of the WSORA violate Appellant's right to equal protection under the Wyoming Constitution because qualifying adjudicated delinquents must register, while adults (or juveniles charged as adults) whose prosecutions are deferred pursuant to Wyo. Stat. Ann. § 7-13-301 are not required to register?

3.  Does the WSORA's lifetime registration provision in Wyo. Stat. Ann. § 7-19-304(a) violate Appellant's right to due process (1) because it encroaches upon his protected right to reputation and confidentiality or (2) by creating an irrebuttable presumption that an offender's risk of reoffense is high?

4.  Does Wyo. Stat. Ann. § 7-19-301(a)(iii) of the WSORA violate the United States Constitution Art. 1, § 10 prohibition against enacting *ex post facto* laws?

## FACTS

[¶3]     As explained in more detail in the discussion below, *see infra* ¶¶ 13-15, the WSORA requires individuals who have committed certain sex crimes to register as sex offenders in Wyoming.  *See* Wyo. Stat. Ann. §§ 7-19-301(a)(iii), (viii) & -302 (LexisNexis 2015).  On July 1, 2011, the number of those subject to the act expanded, as the definition of "convicted" of  a sex offense under WSORA was amended to include "adjudications as a delinquent for offenses specified in W.S. 7-19-302(j)."  *See* 2011 Wyo Sess. Laws Ch. 179, § 1 (H.B. 23).  This amendment not only affected qualifying juveniles from that point on, but also applied to those that had been previously adjudicated as delinquents for such serious sexual crimes.  *Id.*  The latter scenerio is where Appellant's circumstance falls.

1

[¶4]    A few months before the amendment, in May of 2011, Appellant, then 17 years old, appeared in juvenile court and was adjudicated a delinquent for a sexual offense as provided in the WJJA, § 14-6-201.  He was placed at the Wyoming Boys School, released on December 1, 2012, and placed on supervised probation.  After he completed the requirements it had ordered, the juvenile court closed and sealed his file in April of 2013.

[¶5]    Because the expanded definition of "convicted" applied to Appellant, he was required to register as a sex offender when the amendment went into effect in July of 2011.  He apparently complied with the reporting requirements until 2014.  On July 8, 2014, Vaughn reported in person to the Park County Sheriff's Office to register as a sex offender as required by the WSORA.  He informed the deputies that he lived in an apartment complex in Cody, but he failed to return the required address verification form to the sheriff's office.  As a result, two months later the sheriff reported Appellant to the Wyoming Sex Offender Registry as non-compliant.  In October of 2014, an investigator with the Park County Sheriff's Office learned that Appellant had moved from the Cody apartment complex in August, and that he did not notify the sheriff's office of this move.

[¶6]    An information charging Appellant with two felonies for failing to keep his sex offender registration information current was filed on December 1, 2014.[1]  Appellant filed a motion to dismiss, asserting that the WSORA was unconstitutional.  The district court denied Appellant's motion.  He then entered a conditional guilty plea to the crimes charged pursuant to a plea agreement, reserving the right to appeal the district court's denial of his motion to dismiss.  He was sentenced to not less than two nor more than four years of imprisonment, and he timely perfected this appeal.

## STANDARD OF REVIEW

[¶7]    Appellant's issues are all based upon claims that the WSORA is unconstitutional. "The question of whether a statute is constitutional is a question of law over which this Court exercises *de novo* review." *Kammerer v. State*, 2014 WY 50, ¶ 5, 322 P.3d 827, 830 (Wyo. 2014).  Statutes are presumed to be constitutional, and we will resolve any doubt in favor of constitutionality. *Id.*

## DISCUSSION

### The WSORA and the WJJA

[¶8]    Appellant first argues that the non-penal, equitable and confidential character of the WJJA conflicts irreconcilably with the WSORA's registry requirements for

---

[1] A sex offender who fails to comply with the Act is subject to criminal prosecution. Wyo. Stat. Ann. § 7-19-307.

adjudicated juvenile offenders. He contends this conflict creates a constitutionally impermissible ambiguity in these statutes, which ought to require that they be interpreted in his favor due to the rule of lenity.[2]

[¶9]    In order to address Appellant's first issue, we must necessarily interpret both the WSORA and WJJA. Rulings involving interpretation of statutes are reviewed *de novo*. *In re HLL*, 2016 WY 43, ¶ 21, 372 P.3d 185, 189 (Wyo. 2016). Statutes that provide for the care and discipline of juveniles are generally given a liberal and practical construction in favor of the child's welfare. *KP v. State*, 2004 WY 165, ¶ 27, 102 P.3d 217, 225 (Wyo. 2004) (quoting *TPJ v. State*, 2003 WY 49, ¶ 25, 66 P.3d 710, 715 (Wyo. 2003)). The plain language of the statutes still controls our search for the legislature's intent, however. *Id.*

[¶10] We construe statutory provisions *in pari materia*, which requires that we give effect to every word, clause, and sentence according to the interplay between the provisions. *Cheyenne Newspapers, Inc. v. City of Cheyenne*, 2016 WY 125, ¶ 11, 386 P.3d 329, 333 (Wyo. 2016). We consider all statutes relating to the same subject or having the same general purpose, and we strive to interpret them harmoniously. *Id.* "We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence." *Id.* (quoting *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 22, 357 P.3d 1118, 1126 (Wyo. 2015)).

[¶11] With these principles in mind, we turn first to the WJJA, which Wyoming enacted in the mid-20th Century. *See* Wyoming Compiled Statutes, § 1-701 *et seq.*, (Arthur A. Sandusky, comp. 1945, 1957 Cum. Supp.); 1951 Wyo. Sess. Laws Ch. 125 (H.B. 35). Cases under the WJJA are not criminal; rather, they are special proceedings. *KP*, ¶ 27, 102 P.3d at 225. These proceedings are therefore equitable and not punitive. They are intended to assure "treatment, training and rehabilitation" for children, and to "provide for the care, the protection and the wholesome moral, mental and physical development of children" coming within its provisions. Wyo. Stat. Ann. § 14-6-201(c)(ii)(C) and (c)(iii); *KP*, ¶ 27, 102 P.3d at 225. Thus, "one of the purposes of a delinquency proceeding is '[t]o remove, where appropriate, the taint of criminality from children committing certain unlawful acts.'" *K.C. v. State*, 2011 WY 108, ¶ 16, 257 P.3d 23, 28 (Wyo. 2011) (quoting Wyo. Stat. Ann. § 14-6-201(c)(ii)(B)).

[¶12] Accordingly, "[t]he question for adjudication is whether the allegations contained in the petition alleging delinquency are true." *K.C.*, ¶ 16, 257 P.3d at 28. If the

---

[2]  The rule of lenity provides that in construing an ambiguous criminal statute, a court should resolve any ambiguity in favor of the defendant. *Adekale v. State*, 2015 WY 30, ¶ 25, 344 P.3d 761, 768 (Wyo. 2015). When a statute is unambiguous, the rule of lenity has no role to play. *Crain v. State*, 2009 WY 128, ¶ 10, 218 P.3d 934, 940 (Wyo. 2009).

allegations are found to be true, such a finding "is not deemed a conviction of guilt, but is a determination that judicial intervention is necessary for the best interest and welfare of the child and the public." Wyo. Stat. Ann. § 14-6-225(b).[3] "No order or decree pursuant to this act shall be deemed a conviction of a crime or impose any civil disabilities, nor shall it disqualify the child for any civil or military service application or appointment or from holding public office." Wyo. Stat. Ann. § 14-6-238. To prevent the public from knowing of an adjudication of delinquency, the WJJA requires that the case and all records flowing from it remain confidential, with certain strict exceptions. Wyo. Stat. Ann. § 14-6-239.

[¶13] Now that we have considered the WJJA's ethos and its requirements, we must examine the WSORA. As we briefly noted above, *see supra* ¶ 3, the WSORA requires individuals who have committed certain sexual crimes to register as sex offenders. In 1994, Wyoming joined the majority of other states in enacting legislation relating to sex offender registration. *Kammerer*, ¶ 6, 322 P.3d at 830. Originally the WSORA only applied to adults, but in 2011, the act was amended to include juveniles who were adjudicated delinquent for certain serious sexual offenses. *See* 2011 Wyo. Sess. Laws Ch. 179 (H.B. 23). The WSORA now includes the following language:

> "Convicted" includes pleas of guilty, nolo contendere, verdicts of guilty upon which a judgment of conviction may be rendered *and adjudications as a delinquent for offenses specified in W.S. 7-19-302(j)*. "Convicted" shall not include dispositions pursuant to W.S. 7-13-301.

Wyo. Stat. Ann. § 7-19-301(a)(iii) (emphasis added).

[¶14] Under the WSORA, qualifying sexual offenders must register with the county sheriff in their county of residence. Wyo. Stat. Ann. § 7-19-302(a). "The basic provisions of the Act require the registrant to provide identifying information, including the registrant's name, aliases, address, date and place of birth, social security number, place and address of employment, a DNA sample, and any internet identifiers."

---

[3] Proceedings under the WJJA are different than criminal proceedings for adults, although juveniles are afforded certain rights commonly found in criminal cases. One of the stated purposes of the WJJA is to "provide a simple judicial procedure through which the provisions of this act are executed and enforced and in which the parties are assured a fair and timely hearing and their constitutional and other legal rights recognized and enforced." Wyo. Stat. Ann. § 14-6-201(c)(vi). "The act specifically provides that children in juvenile court proceedings have the right to notice of the charges against them, the right to counsel, the privilege against self-incrimination, the right to confront adverse witnesses, and the requirement that charges against them must be proven beyond a reasonable doubt." *SWM v. State*, 2013 WY 49, ¶ 14, 299 P.3d 673, 677 (Wyo. 2013) (citing Wyo. Stat. Ann. §§ 14-6-222, -223, and -225). While the WJJA "does not explicitly address the question, we have recognized that double jeopardy attaches in juvenile proceedings." *SWM*, ¶ 14, 299 P.3d at 677. An alleged delinquent is entitled to trial by jury at an adjudicatory hearing. Wyo. Stat. Ann. § 14-6-223(c).

*Kammerer*, ¶ 7, 322 P.3d at 830. The offender is also required to "provide the date and place of his conviction, the crime for which he was convicted, the age of each victim, the name and address of educational institutions at which the registrant is employed or attending school, the license plate number and description of his vehicle, and any phone number at which the registrant may be reached." *Id.* (citing § 7-19-302(a)). The registrant must also be photographed and fingerprinted. *Id.*

[¶15] The WSORA also establishes a central registry for offenders, and it requires that certain identifying information be made available to the public. *Kammerer*, ¶ 8, 322 P.3d at 831 (citing § 7-19-303(a), (c)(iii)). The limited notice provisions that apply to qualifying juveniles mandate that the offender's information "be provided . . . to residential neighbors within at least seven hundred fifty (750) feet of the offender's residence, organizations in the community, including schools, religious and youth organizations . . . ." Wyo. Stat. Ann. § 7-19-303(c)(ii). "In addition, notification regarding an offender employed by or attending school at any educational institution shall be provided upon request by the educational institution to a member of the institution's campus community . . . ." *Id.* However, unlike adult offenders, a juvenile's information is not made available to the general public on the internet. Wyo. Stat. Ann. § 7-19-303(c)(iii). The method of disseminating information does not change when a juvenile sex offender reaches the age of majority, as Appellant had when he was charged in this case. *Id.*

[¶16] After comparing the two acts, we understand how one might say there is an irreconcilable tension between the confidentiality requirements of the WJJA, and the requirement that information concerning an adjudicated delinquent be made available to a limited circle of the public under the WSORA. We further recognize that the limited public notification requirement for juveniles under the WSORA could stigmatize juvenile offenders. But as we dig deeper into the purpose of the WJJA, we perceive a congruency, rather than a conflict, between the two acts.

[¶17] From its inception, the WJJA was intended to serve the best interests of children and to provide a path towards a promising future for delinquent youth.[4] In 1997, our legislature expanded the purpose of the WJJA to provide for the "protection of the public and public safety." 1997 Wyo. Sess. Laws Ch. 199, § 2 (H.B. 137A). The current version of the WJJA maintains this purpose:

> (c) This act shall be construed to effectuate the following
> public purposes:

---

[4] *See, e.g.*, Wyoming Compiled Statutes, § 1-701 et seq. (Arthur A. Sandusky, comp. 1945, 1957 Cum. Supp.).

> (i) To provide for the best interests of the child and the protection of the public and public safety;
>
> (ii) Consistent with the best interests of the child and the protection of the public and public safety[.]

Wyo. Stat. Ann. § 14-6-201(c)(i), (ii).

[¶18] The plain language of the WJJA shows that it is to be administered to assure public safety as well as to promote the best interest of the child. Furthermore, as we have already said, we presume that the legislature acted in a thoughtful and rational manner with full knowledge of the WJJA, and that it was therefore aware it was limiting protections under it by applying the WSORA to certain juvenile delinquents. *Cheyenne Newspapers, Inc.*, ¶ 11, 386 P.3d at 333. As a result, we can only conclude that the registration and limited notification requirements for certain adjudicated delinquents under the WSORA do not conflict with the purposes of the WJJA.[5] Because the two acts do not conflict, there is no constitutional violation as Appellant asserts.

### Equal Protection

[¶19] Appellant also contends that § 7-19-301(a)(iii) of the WSORA violates his equal protection rights under the Wyoming Constitution.[6] He contends that adult offenders whose charges are disposed of and who successfully complete a period of probation under Wyo. Stat. Ann. § 7-13-301 are not considered to have been convicted, and therefore are not required to register as sex offenders. *See* Wyo. Stat. Ann. § 7-19-301(a)(iii). He goes on to argue that there is no such provision for juveniles under the WJJA, and consequently the WSORA establishes a distinction based upon classification.

---

[5] Other courts have reached the same conclusion. The Nevada Supreme Court recently found that "based on Nevada's long-standing recognition of public protection as one of the dual interests of the juvenile system, we conclude that registration and community notification do not inherently conflict with the purposes of Nevada's juvenile justice system." *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 381 (Nev. 2013). Similarly, the Illinois Supreme Court concluded that because the expanded purpose of the juvenile courts to include public protection and juvenile accountability, the requirement that juvenile sex offenders register—thereby subjecting them to limited community notification—did not conflict with the policy and purpose of the juvenile system. *In re J.W.*, 787 N.E.2d 747, 759 (Ill. 2003); *see also In re Richard A.*, 946 A.2d 204, 214 (R.I. 2008) (concluding "that the nature of the juvenile-justice system is not significantly compromised by a sex-offender-registration requirement. As such, the Registration Act is constitutional as applied to juveniles and respondent is not entitled to a jury trial."); *cf. United States v. Juvenile Male*, 670 F.3d 999, 1008 (9th Cir. 2012) (finding that although SORNA's notification requirement conflicted with the confidentiality provisions of the Federal Juvenile Delinquency Act, Congress clearly intended to limit those confidentiality provisions); *United States v. Under Seal*, 709 F.3d 257, 262 (4th Cir. 2013) (same).

[6] Wyoming's equal protection provisions are contained in Article 1, §§ 2, 7, 34, and 35.

6

[¶20] There is in fact a provision under the WJJA that provides for deferred adjudications for alleged delinquents. That provision states:

> **Abeyance of proceedings by consent decree; term of decree; reinstatement of proceedings; effect of discharge or completing term.**
>
> (a) At any time after the filing of a petition alleging a child delinquent and before adjudication, the court may issue a consent decree ordering further proceedings held in abeyance and place a delinquent child under the supervision of a probation officer. The placement of the child is subject to the terms, conditions and stipulations agreed to by the parties affected. The consent decree shall not be entered without the consent of the district attorney, the child's attorney, where applicable, and the child and the notification of the parents. Modifications to an existing consent decree may be allowed.
>
> (b) The consent decree shall be in writing and copies given to each of the parties. The decree shall include the case plan for the child.
>
> (c) A consent decree shall be in force for the period agreed upon by the parties but not longer than one (1) year unless the child is sooner discharged by the court.
>
> (d) If prior to discharge by the court or expiration of the consent decree, a child alleged to be delinquent fails to fulfill the terms and conditions of the decree or a new petition is filed alleging the child delinquent because of misconduct occurring during the term of the consent decree, the original petition and proceedings may be reinstated upon order of the court after hearing and the matter may proceed as though the consent decree had never been entered. If, as part of the consent decree, the child made an admission to any of the allegations contained in the original petition, that admission shall be entered only if the court orders that the original petition and proceeding be reinstated and the admissions, if any, be entered. If the admission is entered, the court may proceed to disposition pursuant to W.S. 14-6-226.

(e) If a consent decree is in effect and the child is in placement, the court shall hold a six (6) month and twelve (12) month review under W.S. 14-6-229.

(f) A child discharged by the court under a consent decree without reinstatement of the original petition and proceeding shall not thereafter be proceeded against in any court for the same offense or misconduct alleged in the original petition.

Wyo. Stat. Ann. § 14-6-228.[7]

[¶21] If the court issues a consent decree ordering further proceedings held in abeyance, and the juvenile complies with the terms of the decree, he will be discharged and never adjudicated a delinquent, just as the defendant in a 301 deferral would. In such a case, the juvenile would not be subject to the WSORA. There is no meaningful distinction between a consent decree and a 301 deferral. For this reason alone, if not for others, because juveniles are afforded the same opportunity as adults to enter into a consent decree deferring their respective cases, the WSORA does not violate the Wyoming Constitution's equal protection clause, Art. 1 § 2.

### Due Process Rights

[¶22] Appellant also contends that the WSORA's lifetime registration provision violates his due process rights under the Fourteenth Amendment to the United States Constitution and Article 1, § 6 of the Wyoming Constitution as applied to him. This is so, he says, because registering improperly encroaches on his protected liberty interest in his reputation and the confidentiality provided for under the WJJA. He also claims that the

---

[7] Deferring a juvenile adjudication is not a new remedy in Wyoming. In 1951, the WJJA provided:

Deferred Hearing.

b. If the court determines a deferred hearing would be for the best interests of the child, and not in conflict with the best interests of the public, the judge shall hold legal process with respect to the child in abeyance for six months, contingent upon the good behavior of the child. During this period of six months, the child shall be under the informal supervision of either a probation officer or county welfare worker, whichever the judge may direct. The court shall administratively close the case upon the child's satisfactory completion of the six month period, or process the original petition forthwith where there is a subsequent delinquency.

See Wyoming Compiled Statutes, § 1-711(b) (Arthur A. Sandusky, comp. 1945, 1957 Cum. Supp).

registration requirement creates an impermissible irrebuttable presumption that he is at high risk to reoffend.

[¶23] We begin our analysis by turning to the relevant constitutional due process provisions. The Fourteenth Amendment to the United States Constitution prohibits any state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. 4, § 1. Similarly, the Wyoming Constitution's Due Process Clause states that "[n]o person shall be deprived of life, liberty or property without due process of law." Wyo. Const. Art. 1, § 6. Both constitutions employ the same language, and we have held that they afford equivalent protections. *See Reiter v. State*, 2001 WY 116, ¶ 19, 36 P.3d 586, 592 (Wyo. 2001)

[¶24] Due process has both procedural and substantive components. *Reiter*, ¶ 20, 36 P.3d at 592. The two components are distinct because each has different aims and imposes different constitutional limitations on the government's power. *See id.* The United States Supreme Court has explained: "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

[¶25] Appellant does not advise us whether he claims the alleged due process violations are substantive or procedural. Our understanding after reading his brief and listening to oral argument is that the alleged due process violation regarding reputation and confidentiality is a substantive claim, while his irrebuttable presumption theory is procedural. We will address the arguments accordingly.

### *Protected Right to Reputation and Confidentiality*

[¶26] The substantive component of due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Reiter*, ¶ 20, 36 P.3d at 592-93 (citations and quotation marks omitted); *see Laughter v. Bd. of Cnty. Comm'rs for Sweetwater Cnty.*, 2005 WY 54, ¶ 42, 110 P.3d 875, 887 (Wyo. 2005). We have principally adopted "the two-tiered scrutiny employed by the federal courts in analyzing substantive due process . . . challenges." *Reiter*, ¶ 20, 36 P.3d at 593. If a statute affects a fundamental interest, we must strictly scrutinize that statute to determine if it is necessary to achieve a compelling state interest—often referred to as the strict scrutiny test. *Id.* On the other hand, if the statute simply affects ordinary interests in the economic and social welfare area, we only need to determine that it is rationally related to a legitimate state objective, which is often referred to as the rational basis test. *Id.*

[¶27] Fundamental rights are those liberties that are objectively deeply rooted in this country's history and tradition.[8] *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997). New fundamental rights are rarely found "because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Hts., Tex.*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); *see also Glucksberg*, 521 U.S. at 721, 117 S.Ct. at 2268. "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." *Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267-68. Accordingly, courts must "exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of individual judges. *Id.* (citations and quotation marks omitted).

[¶28] This Court has had several opportunities to consider whether a fundamental right has been at issue. For example, we have determined that the right to associate with one's family is a fundamental constitutional right. *Michael v. Hertzler*, 900 P.2d 1144, 1147 (Wyo. 1995). Access to the courts has also been found to be a fundamental right. *Mills v. Reynolds*, 837 P.2d 48, 54 (Wyo. 1992); *see also Kordus v. Montes*, 2014 WY 146, ¶ 10, 337 P.3d 1138, 1141 (Wyo. 2014). An opportunity for an education is fundamental as well. *See In re RM*, 2004 WY 162, ¶ 18, 102 P.3d 868, 874 (Wyo. 2004).

[¶29] Appellant does not contend that there is a fundamental right at issue under either the United States or Wyoming constitutions regarding his reputation and his statutory right to confidentiality of his adjudication as a juvenile under the WJJA. He provides no basis for us to conclude that such a right is deeply rooted in our nation's history and tradition. Our own research does not reveal a reason to believe it is. *See, e.g., State v. Eighth Jud. Dist. Ct. (Logan D.)*, 306 P.3d 369, 375-76 (Nev. 2013) (applying rational basis test to juvenile required to register as a sexual offender registration as no fundamental right at issue); *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (same); *In re J.W.*, 787 N.E.2d 747, 757 (Ill. 2003) (same); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (concluding reputation alone, without being coupled with some more tangible interests, does not implicate any liberty interests sufficient to invoke the procedural protection of the Due Process Clause). Thus, we conclude that juveniles who have been convicted of serious sex offenses do not have a fundamental right to be free from the registration and notification requirements set forth in the WSORA, even if those require information concerning them and their offenses to be disseminated in limited ways and to potentially remain in place for life.

---

[8] The Supreme Court of the United States has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain liberty and privacy interests implicit in the due process clause and other constitutional rights. *See Glucksberg*, 521 U.S. at 720, 117 S.Ct. at 2267. Such important liberty interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* (citations omitted).

[¶30] Because the WSORA does not implicate Appellant's liberty in a manner that impacts a fundamental right, we must decide only whether the WSORA's registration requirement as applied to Appellant as a juvenile is reasonably related to a legitimate government interest. The rational basis test does not require that the law "be in every respect logically consistent with its aims to be constitutional." *United States v. Comstock*, 560 U.S. 126, 151, 130 S.Ct. 1949, 1966, 176 L.Ed.2d 878 (2010) (quoting *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487-88, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Rather, "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.*

[¶31] We find the WSORA's registration requirement for qualifying juveniles is rationally related to a legitimate government interest. As we have explained above, *see supra* ¶¶ 11-12, although the WJJA promotes the best interests of minors in our juvenile court system, its purpose is also for "the protection of the public and public safety." Wyo. Stat. Ann. § 14-6-201(c)(i), (ii). In protecting the public, the WSORA aids in the prevention, avoidance, and investigation of future sex offenses. *Kammerer*, ¶ 28, 322 P.3d at 838; *see also Snyder v. State*, 912 P.2d 1127, 1132 (Wyo. 1996). Consistent with this purpose, our legislature determined that juveniles adjudicated for offenses under § 7-19-302(j)—which are the most serious of sexual offenses—must register in order to protect the public.

[¶32] The juvenile's registration information is available only to a limited group of the public, including certain neighbors, schools and organizations. Wyo. Stat. Ann. § 7-19-303(c)(ii); *see also Kammerer*, ¶ 8, 322 P.3d at 831. Notification to an educational institution the juvenile offender is attending or where he works must also be provided upon request by the institution. *Id.* However, unlike an adult, a juvenile's information is not made available to the general public through the public registry on the internet. Wyo. Stat. Ann. § 7-19-303(c)(iii); *compare Kammerer*, ¶ 8, 322 P.3d at 831. Providing a juvenile offender's information to a limited group of people whose safety may be compromised constitutes a reasonable method of protecting the public.

[¶33] We cannot say that the registration requirement of the WSORA, as applied to one who offended as a juvenile as Appellant did, is irrational.

*Irrebuttable Presumption*

[¶34] Appellant argues that while he and others who offended as juveniles are afforded the necessary procedural due process in the underlying delinquency adjudication, he is denied due process because he cannot challenge whether he should be required to register under the WSORA after adjudication. The absence of a meaningful process, Appellant

11

posits, turns the requirement that Appellant register under the WSORA into an irrebuttable presumption that he is at high risk to reoffend.

[¶35] We have previously noted that irrebuttable presumption claims sometimes arise as a matter of substantive due process. *See Moreno v. Dep't of Revenue & Taxation,* 775 P.2d 497, 500-01 (Wyo. 1989). Referring to older United States Supreme Court precedent on that topic, this Court commented that "those holdings represent anomalies in substantive due process and equal protection analysis." *Id.* at 500. This Court further recognized that these cases do "not consider the character of the alleged life, liberty, or property interest affected" and "might be interpreted to inject a strict judicial scrutiny standard of review into the substantive due process analysis every time a litigant can locate a conclusive statutory presumption." *Id.* The Court went on to comment that such an "approach would wreak havoc with traditional due process and equal protection analyses which focus first on the asserted life, liberty, or property entitlement involved or an alleged invidious discrimination against a discrete minority, or infringement of a fundamental constitutional right." *Id.*

[¶36] This Court further explained that the United States Supreme Court has since backed away from a *per se* application of the irrebuttable presumption doctrine in favor of the traditional substantive due process analysis. *Id.* We noted that the doctrine should not be applied "in a way that might circumvent this court's established substantive due process or equal protection analysis." *Id.* at 501. The Court concluded that "[a] statute violates substantive due process when a litigant with standing shows that the challenged statute adversely affects a recognized life, liberty, or property entitlement and in doing so does not promote a legitimate state objective by reasonable means." *Id.*

[¶37] We do not find this to be an issue of substantive due process, which renders the irrebuttable presumption cases inapplicable. Appellant does not indicate otherwise. Thus, as we have already noted, we look to procedural due process requirements.

[¶38] The guarantee of procedural due process assures that there will be fair and adequate legal proceedings. This Court has explained that "[p]rocedural due process principles require reasonable notice and a meaningful opportunity to be heard before government action may substantially affect a significant property [or liberty] interest." *Pfeil v. Amax Coal W., Inc.*, 908 P.2d 956, 961 (Wyo. 1995). To "assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 27, 367 P.3d 619, 626 (Wyo. 2016) (quoting *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004)).

[¶39] Appellant relies on a recent decision from the Pennsylvania Supreme Court, which recognized that the right to reputation was fundamental under that state's constitution. *In re J.B.*, 107 A.3d 1, 16 (Pa. 2014). Based upon that premise, it held the application of the sex offender registration act's lifetime registration requirements upon adjudication of specified offenses violates a juvenile offender's due process rights by utilizing an irrebuttable presumption. *Id.* at 19-20.

[¶40] Pennsylvania's law is distinguishable, and *In re J.B.* is inapplicable in the instant case. *Cf. In re A.C.*, 54 N.E.3d 952, 964 (Ill. App. 2016). That is because in Wyoming, reputation alone has never been recognized as a fundamental right under our state constitution. *See Crofts*, ¶¶ 29-30, 367 P.3d at 626; *cf. Paul*, 424 U.S. at 701-10, 96 S.Ct. at 1160-65. Another jurisdiction, Illinois, has dealt with a similar issue and provides guidance.

[¶41] An Illinois appellate court faced the question of whether that state's sexual offender registration act violated procedural due process because it did not afford juvenile offenders the opportunity to be heard on the issue of their continuing danger to the community before requiring them to register. *In re J.R.*, 793 N.E.2d 687, 697 (Ill. App. 2003). It determined that the registration act required "sex offenders, including juvenile sex offenders, to register not based on dangerousness, but based upon the fact the offender was adjudicated delinquent or convicted of a sex offense." *Id.* Because the disclosure provisions were triggered upon adjudication, it was irrelevant whether the juvenile was a continuing danger. *Id.*; *see also In re A.C.*, 54 N.E.3d at 964. We find that court's reasoning persuasive, and we will follow its lead in the instant case.

[¶42] Appellant could only be adjudicated delinquent of a sex offense after a trial (an adjudicatory hearing), as he concedes. However, procedural due process does not entitle him—a juvenile found delinquent of committing a serious sex offense—to a second hearing to demonstrate that he is not a high risk to reoffend. Whether he is a continuing danger is simply not germane to the duty to register as required by the WSORA. The WSORA's registration requirement is reasonable and consistent with a state's exercise of its police power to protect the safety and general welfare of the public from those committing serious sexual offenses. *See Snyder*, 912 P.2d at 1132. Appellant has directed us to scholarly resources which suggest that juvenile sex offenders are not at as great a risk as adult sex offenders to harm others. However, the legislature decided that a juvenile offender who commits the kind of offense he was held to have committed should be required to register under the WSORA. As already noted, this was a permissible choice for that policy-making branch of our government to make.

[¶43] In sum, Appellant has failed to establish that the WSORA's registration requirement violates his due process rights, substantive or procedural, under the United States and Wyoming constitutions.

*Ex Post Facto*

[¶44]  This Court has on other occasions considered whether the WSORA violates the United States Constitution, Art. 1, § 10, prohibition against enacting *ex post facto* laws as it applies to adult offenders.[9]  *See Kammerer*, ¶¶ 9-32, 322 P.3d at 831-39; *Snyder*, 912 P.2d at 1130-31.  Most recently, in *Kammerer*, we began our analysis by recognizing that the constitutional prohibition against *ex post facto* laws only applies to statutes that impose penalties.  ¶¶ 9-32, 322 P.3d at 831-39.  We explained:

> In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature.

*Id.* ¶ 9, 322 P.3d at 831 (citations omitted).

[¶45]  We then applied the requisite two-step inquiry to determine whether or not the WSORA was penal as applied to an adult sex offender.  *Id.* ¶¶ 13-32, 322 P.3d at 832-39 (applying framework set forth in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146-47, 155 L.Ed.2d 164 (2003)).  The first step required a determination as to whether the legislature meant the statute to establish civil proceedings.  *Kammerer,* ¶ 13, 322 P.3d at 832.  If the legislature's intent was to impose punishment, that would end the inquiry.  *Id.* On the other hand, if the intent was to enact a regulatory scheme that is civil and non-punitive, our task was then to examine whether the statute was punitive to such an extent—either in purpose or effect— that it negated the legislature's intention that it be considered civil.  *Id.*

[¶46]  As to the first step, we examined the legislature's intent in enacting the WSORA, and reaffirmed our prior precedent holding that the law-making branch intended to impose regulatory, as opposed to punitive, requirements.  *Id.* ¶ 18, 322 P.3d at 834.  We then turned to the second step as to whether the effect of the WSORA negates the legislature's intent to create regulatory requirements for sex offenders.  *Id.* ¶¶ 19-32, 322 P.3d at 834-39.  We thoroughly analyzed this step by applying relevant factors "to

---

[9] Article 1, § 10 provides that "[n]o state shall . . . pass any . . . ex post facto law . . . ."

evaluate whether the regulatory scheme (1) has been regarded in our history and traditions as a punishment, (2) imposes an affirmative disability or restraint, (3) promotes the traditional aims of punishment, (4) has a rational connection to a nonpunitive purpose, or (5) is excessive with respect to this purpose." *Id.* ¶ 19, 322 P.3d at 834 (citing *Smith*, 538 U.S. at 97, 123 S.Ct. at 1149). After applying these factors to the WSORA, we concluded "that the effects of the [WSORA] do not override the legislature's intent to enact a regulatory scheme for registration of sex offenders." *Id.* ¶ 19, 322 P.3d at 834. Because we determined that the effects of the WSORA do not negate the legislature's intent to impose a regulatory scheme under the WSORA, we again held—as we did in *Snyder*— that the act does not violate the *ex post facto* clause of the United States Constitution. *Id.* ¶ 32, 322 P.3d at 839.

[¶47] However, Appellant claims that his case is distinguishable because our past decisions did not deal with juvenile offenders who are subject to the WSORA. He correctly points out that adult criminal convictions for sex offenses are reflected in a public record. He claims that since adjudications under the WJJA are confidential, the effect of requiring registration and limited notification transforms the legislature's intent to enact a regulatory scheme into a punitive one.

[¶48] There is no doubt that the legislature's purpose in enacting the WSORA was to impose regulatory, as opposed to punitive, requirements. *Kammerer*, ¶¶ 15-18 , 322 P.3d at 833-34; *Snyder*, 912 P.2d at 1131. Appellant does not dispute this conclusion.

[¶49] Turning to the effect of the WSORA, and whether it negates the legislature's intent to create regulatory requirements for juvenile sex offenders, we cannot say that it does. As to the first factor, the WSORA's publication and notification requirements are not historically regarded as punishment. *Kammerer*, ¶¶ 20-22, 322 P.3d at 834-36. While the limited dissemination of information relating to a juvenile's status as a sex offender may have some negative connotations, disclosure of certain information is a necessary result of the WSORA's objective to protect the public from harm, just as it is a partial purpose of the WJJA. *See id.* ¶ 21, 322 P.3d at 836. This factor weighs in favor of a finding that the WSORA is not punitive in purpose or effect.

[¶50] As to the second factor, we must consider "how the effects of the [WSORA] are felt by those subject to it." *Kammerer*, ¶ 23, 322 P.3d at 836. We are convinced that the disability or restraint as applied to Appellant is slight and indirect, and its effects are not punitive. While Appellant must keep his information updated while subject to the WSORA, we find that the requirements do not make the act so punitive either in purpose or effect as to negate the legislature's intent to create a regulatory scheme. *See id*. ¶¶ 23-25, 322 P.3d at 836-37. This factor likewise does not weigh in favor of a finding that the WSORA has a punitive effect.

[¶51] The third factor looks at the traditional aims of punishment, which are retribution and deterrence. The classification of juvenile offenders based on their crimes is not indicative of retributive intent. The WSORA "does not have a punitive effect merely because it may deter the commission of sex offenses." *Id.* ¶ 26, 322 P.3d at 838. This factor also does not weigh in favor of a finding that the WSORA has a punitive effect.

[¶52] As to the fourth factor, the WSORA bears a rational connection to the purpose of public safety, requiring identification of certain juveniles convicted of serious sex offenses, and by making that information available to law enforcement agencies and to a limited portion of the public. *See id.* ¶ 28, 322 P.3d at 838. We reaffirm that "the purpose of sex offender registration is to aid in the prevention, avoidance, and investigation of future sex offenses." *Id.* (citations and quotation marks omitted). We are not persuaded by Appellant's assertion that the rational connection effervesces when a juvenile is involved. Thus, analysis of this factor does not lead us to conclude that the WSORA has a punitive purpose or effect.

[¶53] Lastly, the legislature's identification of certain juveniles adjudicated for specified sex offenses constitutes a reasonable basis for determining potential risks to the public and is not excessive. The WSORA's registration requirements are a reasonable method of achieving the goal of public safety, which is a very important interest. We point out that while the WSORA initially requires an offender to register for the rest of his life, this duty may terminate in certain cases upon petition to be relieved from that duty. Wyo. Stat. Ann. § 7-19-304(a). With respect to juveniles subject to the WSORA, it provides that those who have been

> adjudicated as a delinquent for offenses specified in W.S. 7-19-302(j), who has been registered for at least ten (10) years, exclusive of periods of confinement and periods in which the offender was not registered as required by law, may petition the district court for the district in which the offender is registered to be relieved of the duty to continue to register if the offender has maintained a clean record as provided in subsection (d) of this section.

*Id.* at (a)(i). "Upon a showing that the offender has maintained a clean record as provided in subsection (d) of this section for ten (10) years, the district court may order the offender relieved of the duty to continue registration[.]" *Id.* Because of the considerable interests at stake, the WSORA's requirements constitute a reasonable method of achieving the goal of public safety. *See Kammerer*, ¶¶ 31-32, 322 P.3d at 839. Analysis of this factor does not reveal that the WSORA has a punitive purpose or effect.

[¶54] In sum, these factors weigh against finding that the WSORA has a punitive effect as applied to juvenile offenders like Appellant. The WSORA only imposes a regulatory

burden on certain juvenile offenders adjudicated for serious sexual offenses, and the effects of the act do not negate the legislature's intent to impose that regulatory scheme. Thus, we again find that the WSORA does not violate the *ex post facto* clause of the United States Constitution.

[¶55] We note that Wyoming's legislature has recently taken steps to see that juvenile sex offenders receive a hearing to determine whether they are at significant risk of reoffending. *See* 2016 Wyo. Sess. Laws Ch. 13 (S.F. 47); Wyo. Stat. Ann. § 7-19-309 (LexisNexis 2016 Supp). This statute requires that the Wyoming Division of Criminal Investigation give notice to the district or county attorney in the county where an adjudicated offender moves or lives. If that official believes that an offender is at moderate or high risk to reoffend, he or she may obtain a determination by a juvenile or district court as to the level of risk. If the offender is at low risk, although he must continue to notify the local sheriff of his whereabouts, notification of neighbors, organizations, etc., is not required. If the offender is at moderate or high risk to reoffend, notification must be made to neighbors, organizations, etc., as was the case for all juvenile offenders before this most recent enactment. *Id.* The legislature did not make this legislation retroactive, and thus Appellant will not benefit from it.[10] While we may consider this new legislation a fairer means of dealing with juvenile offender notification, there is no constitutional infirmity in the legislation which must be applied in this case, and it was within the legislature's power to make the new procedure effective prospectively.

[¶56] Affirmed.

---

[10] 2016 Wyo. Sess. Laws Ch. 13, § 3 provides:

> "This act shall apply to juvenile convictions or adjudications commenced on or after the effective date of this act."

The effective date of the act was July 1, 2016. *Id.* § 4.