# THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 94

APRIL TERM, A.D. 2022

August 2, 2022

IN THE INTEREST OF:

JP,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-21-0262

*Appeal from the District Court of Campbell County*
*The Honorable Thomas W. Rumpke, Judge*

*Representing Appellant:*

Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel. Argument by Mr. Bennett.

*Representing Appellee:*

Bridget L. Hill, Attorney General, Jenny L. Craig, Deputy Attorney General, Joshua C. Eames*, Senior Assistant Attorney General, Kristen Reeves Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

* An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    JP appeals from an order adjudicating him delinquent and the corresponding order of disposition.  He asserts he received ineffective assistance of counsel when his attorney failed to timely demand a jury trial.  We affirm.

## ISSUE

[¶2]    We rephrase the issue as:

> I.    Did JP receive ineffective assistance of counsel which deprived him of his right to a jury trial?

## FACTS

[¶3]    The underlying facts of this case are not directly relevant to the issue on appeal. In summary, the State filed a delinquency petition alleging JP, who was 17 years old, inflicted sexual intrusion on LH, who was 13 years old, while she was asleep and physically helpless, in violation of Wyoming Statutes § 6-2-302(a)(iii), § 6-2-306(a)(i), and § 6-10-102.  The juvenile court held an initial hearing on the delinquency petition on April 12, 2021.  JP was represented by privately retained counsel at the initial hearing.  At the initial hearing, the juvenile court advised JP of his right to demand a jury trial:

> You are entitled to have a trial in this matter. At that trial you can request a jury. If you request a jury within ten days of today and make that request in writing with the clerk of district court, it will entitle you to a jury trial of either 6 or 12 persons, depending how it's requested. If you don't make that request within ten days, it will be a bench trial, but in either event you're going to have a trial with me presiding over it either as the finder of fact or just the arbiter of law within 60 days of the -- today, or at most, 90 days from the filing of the Petition.

After advising JP of his other statutory and constitutional rights, the juvenile court confirmed JP understood his rights.  Although the parties agreed three days were needed for the adjudicatory hearing, JP did not orally demand a jury trial at his initial hearing.

[¶4]    On April 15, 2021, three days after the initial hearing, JP's private counsel asked to withdraw.  That same day, the juvenile court entered an order allowing him to withdraw and a separate order appointing the public defender's office to represent JP.  The juvenile court set the case for a three-day "trial" beginning June 30, 2021.  This notice of setting did not specify whether the adjudicatory hearing would be a bench trial or a jury trial.

1

[¶5]    On April 19, 2021, seven days after the initial hearing, JP's new attorney filed a document called Juvenile's Omnibus Entry of Appearance and Initial Motions and Demands for Production. Although this pleading demanded a speedy trial under Rule 48 of the Wyoming Rules of Criminal Procedure, Article 1, § 10 of the Wyoming Constitution,[1] and the Sixth Amendment to the United States Constitution,[2] it did not contain a demand for a jury trial under Wyoming Statute § 14-6-223(c) of the Juvenile Justice Act. No separate jury demand was filed within the statutory ten-day period.

[¶6]    The juvenile court held a scheduling conference on June 3, 2021, fifty-two days after the initial hearing. At that conference, the juvenile court indicated it had not seen a jury demand filed in this case. The county attorney confirmed she likewise had not seen a jury demand. The juvenile court then asked JP's attorney if the court had somehow missed the demand. JP's counsel stated:

> You did not, Your Honor. I just, for the record, I was not
> present at the initial hearing. I hadn't been appointed yet. So I
> did not make a jury demand. I know my client would like a jury
> trial. I don't know if the Court will entertain a demand at this
> point.

The juvenile court then asked the court reporter to review the transcript of the initial hearing to confirm the court had advised JP of "the ten-day right" at that hearing. The court reporter confirmed the court had given JP the advisement. The county attorney argued JP waived his right to a jury trial by not filing a jury demand within the ten-day period set forth in Wyoming Statute § 14-6-223(c), and the State wished to enforce that waiver.

[¶7]    JP's attorney argued JP had a right to a jury trial because the delinquency petition charged him with the equivalent of a felony. The juvenile court found delinquency cases were not criminal proceedings, and the Sixth Amendment right to a jury trial did not apply in juvenile cases. When discussing JP's statutory right to a jury trial, the juvenile court stated: "the legislature has spoken clearly in [Wyoming Statute] 14-6-223(c), and it says that the demand must be made . . . ." The juvenile court concluded JP waived his statutory right to a jury trial by not filing a timely demand, the State had the right to enforce the waiver, and there was no "good reason" not to enforce the waiver.

[¶8]    On June 30, 2021, one day before the adjudicatory hearing was scheduled to begin, JP filed a Renewed Motion for a Jury Trial. JP asserted for the first time the demand for a speedy trial contained in his omnibus pleading was a timely jury demand. JP argued he

---

[1] Article 1, § 10 of the Wyoming Constitution guarantees a "speedy trial by an impartial jury" in "all criminal prosecutions."

[2] The Sixth Amendment to the United States Constitution mandates a "speedy and public trial, by an impartial jury" in "all criminal prosecutions."

2

had "an undeniable right" to a jury trial, which he asserted "both through timely demands and by oral requests to the [c]ourt." He asked the juvenile court to honor his "constitutional" right to a jury trial.

[¶9] The juvenile court addressed JP's renewed motion at the beginning of the adjudicatory hearing:

> [THE COURT:] Are you claiming that the demand for a speedy trial pursuant to Article 1, Section 10 of the Wyoming Constitution was a demand for a jury trial?
>
> [DEFENSE COUNSEL]: I'm saying that -- excuse me, Your Honor. The argument is that I filed the same demand as I file in all my proceedings which is made pursuant to the Constitution of Wyoming and the Constitution of the United States which allows for a speedy trial for all accused in a criminal proceeding.
>
> THE COURT: And you're aware that the Wyoming Supreme Court has specifically said this is not a criminal proceeding; is that correct? Are you aware of that?
>
> [DEFENSE COUNSEL]: I am aware of that.
>
> THE COURT: So the criminal proceeding, that wouldn't apply, correct?
>
> [DEFENSE COUNSEL]: However, I'm also aware of the fact that the Wyoming Legislature has said that a juvenile's constitutional rights are protected under the juvenile act, and it is a constitutional right to have a speedy trial.
>
> THE COURT: A speedy trial. My question was much more precise. Is it your claim that what you filed on August 12th, as described in your motion, was a demand for a jury trial?
>
> [DEFENSE COUNSEL]: Yes, Your Honor, that is my claim because that is the demand that the public defender's office always files.
>
> THE COURT: Okay. Well, I find that it was not. It shows, obviously, that – didn't know what was going on, and I'm going to take judicial notice of a case because your office has

previously filed specific demands for a jury trial. I'm going to take judicial notice of those. I'm not going to – I'll give you the case number later, but, of course, for confidentiality purposes. And this says that "Come [sic] now, the juvenile, by and through his attorney, Jefferson Coombs, assistant public defender, enters a demand for a jury trial pursuant to Wyoming Statute 14-6-223."

This was signed by another attorney for Mr. Coombs.

So do you wish to be heard on the fact that your office previously has filed clearly –

[DEFENSE COUNSEL]: No, Your Honor,

THE COURT: -- different demands for jury trial?

[DEFENSE COUNSEL]: No, Your Honor.

The State renewed its argument JP had waived his right to a jury trial. The juvenile court then offered to allow JP to make a motion to transfer the case to adult court where he would be entitled to a jury trial. JP declined this invitation. The juvenile court found JP's renewed motion was not supported by the law. The juvenile court again held delinquency proceedings were not criminal proceedings, and the jury trial portion of Article 1, § 10 of the Wyoming Constitution only applied in criminal proceedings. It further found the plain language of Wyoming Statute § 14-6-223(c) required a jury demand to be made within ten days of the initial hearing, and JP's failure to file such a demand was a waiver of that right. The juvenile court denied the renewed motion for a jury trial and proceeded to conduct the adjudicatory hearing as a bench trial.

[¶10]   After hearing the testimony of nine witnesses, including LH and JP, the juvenile court found the State proved beyond a reasonable doubt JP committed a delinquent act, namely first-degree sexual assault. The juvenile court found the victim's testimony was credible because of "corroborating evidence." The juvenile court stated:

[B]oth of the testimonies, the victim and the juvenile, were corroborative of what all the events leading up to the sexual assault were.

There were minor discrepancies, but these minor discrepancies don't make the victim less credible. Small differences in the amount of time that elapsed are minimal, and those do not make me find the testimony incredible.

4

What makes me find the testimony most credible is the 911 call and the interaction with Deputy Akers following the event. This is a hysterical victim, who would, for me not to believe this event, would have had to in the space of just a few moments, 10 to 15 minutes . . . in the space of 10 to 15 minutes would have had to have concocted an incredible story and built up the ability to make this emotional plea that we see during the events of the two videos.

A more likely explanation and why I find the testimony credible is that there was a startling event; that is, a sexual assault. She was awakened by her vagina being penetrated by the juvenile's fingers.

[¶11]  A dispositional hearing was held on August 23, 2021.  JP was sentenced to one year of juvenile probation.  This appeal timely followed.

## DISCUSSION

[¶12]  At the adjudication stage, a juvenile facing delinquency proceedings has the right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 10 of the Wyoming Constitution. *In Interest of LDO*, 858 P.2d 553, 556 (Wyo. 1993); *see also In re Interest of BW*, 12 P.3d 675, 677 (Wyo. 2000).  In *LDO*, we adopted the two-pronged test for ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *LDO*, 958 P.2d at 556.  Under this test, the juvenile must show: 1) counsel's performance was deficient; and 2) the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

[¶13]  The deficient performance prong requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [juvenile] by the Sixth Amendment." *Id.*  The prejudice prong "requires a showing that counsel's errors were so serious as to deprive the [juvenile] of a fair trial, a trial whose result is reliable." *Id.*  To prove prejudice, the juvenile "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A claim of prejudice must be supported by more than bald assertions or speculation. *Jackson v. State*, 2019 WY 81, ¶ 28, 445 P.3d 983, 991 (Wyo. 2019) (quoting *Castellanos v. State*, 2016 WY 11, ¶ 99, 366 P.3d 1279,

5

1305 (Wyo. 2016)).[3] "A failure to establish one of the two prongs dooms an ineffective assistance of counsel claim." *Steplock v. State,* 2022 WY 12, ¶ 20, 502 P.3d 930, 937 (Wyo. 2022) (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351–52 (Wyo. 2021)). "We may dispose of an ineffective assistance of counsel claim solely on the prejudice prong." *Id.* at ¶ 22, 502 P.3d at 937 (quoting *Jendresen v. State*, 2021 WY 82, ¶ 37, 491 P.3d 273, 285 (Wyo. 2021)). We will address only the dispositive element of prejudice.

[¶14]   JP asserts he "was prejudiced by his counsel's deficient performance which denied him a right he was entitled to." He admits it is "impossible to speculate whether the verdict would have been different had [this] matter been tried to a jury." However, he argues he should not have to show the outcome of his trial would have been different. Instead, he claims "[t]he prejudice [] lies in the denial of his right to a jury trial not on the speculation of what a nonexistent jury might have thought." The State asserts JP's argument is not sufficient under *Strickland*, and JP must "affirmatively prove prejudice" by showing the result of the proceeding would have been different.

[¶15]   We begin our analysis by discussing the nature of a juvenile's right to a jury trial at the adjudicative stage. Proceedings brought under the Juvenile Justice Act are not criminal proceedings. *TPJ v. State*, 2003 WY 49, ¶ 25, 66 P.3d 710, 715 (Wyo. 2003) (citing *BW*, 12 P.3d at 677). "The proceedings are equitable and not punitive to accomplish the purpose of providing 'treatment, training and rehabilitation' for children, and to 'provide for the care, the protection and the wholesome moral, mental and physical development of children coming within its provisions.'" *Id.* at ¶ 25, 66 P.3d at 715 (quoting Wyo. Stat. Ann. § 14-6-201(c)(ii)(C) and (c)(iii) (LexisNexis 2001)). One of the purposes of a delinquency proceeding is "to remove, where appropriate, the taint of criminality from children committing certain unlawful acts." *Vaughn v. State*, 2017 WY 29, ¶ 11, 391 P.3d 1086, 1091–92 (Wyo. 2017) (quoting *K.C. v. State*, 2011 WY 108, ¶ 16, 257 P.3d 23, 28 (Wyo. 2011)). If the allegations in a delinquency petition are found to be true, such a finding is not considered a conviction of guilt but is instead a determination judicial intervention is necessary for the best interest and welfare of the child and the public. *Id.* at ¶ 12, 391 P.3d at 1092 (citing Wyo. Stat. Ann. § 14-6-225(b)). The Juvenile Justice Act gives juveniles the right to "a fair and timely hearing" where "their constitutional and other legal rights" are "recognized and enforced." Wyo. Stat. Ann. § 14-6-201(c)(vi) (LexisNexis 2021).

[¶16]   "[I]n adjudicatory hearings minors are entitled to those rights which comport with due process and fair treatment under the Fourteenth Amendment to the United States Constitution." *Matter of ALJ*, 836 P.2d 307, 311 (Wyo. 1992) (citing *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967); *Kent v. United States*, 383 U.S. 541, 86 S. Ct.

---

[3] Although juvenile cases are not criminal cases, the *Strickland* test is most often applied in criminal cases. Therefore, criminal cases where the test has been applied are instructive for our application of the test in juvenile cases.

1045, 16 L. Ed. 2d 84 (1966)). However, more than 50 years ago, the Supreme Court of the United States held a "trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S. Ct. 1976, 1986, 29 L. Ed. 2d 647 (1971). If a jury trial were required by the constitution, it would "remake the juvenile proceeding into a fully adversary process and [would] put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding." *Id.* "The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner." *Id.* at 547, 91 S. Ct. at 1987. While juveniles are not constitutionally entitled to a jury trial, a state may permit jury trials in juvenile cases, but this "is the State's privilege and not its obligation." *Id.*

[¶17] Wyoming has chosen to give juveniles a statutory right to a jury trial at the adjudicative stage. Wyo. Stat. Ann. § 14-6-223(c) (LexisNexis 2021). While statutes that provide for the care and discipline of juveniles "are generally given a liberal and practical construction in favor of the child's welfare," the "plain language of the statutes still controls our search for the legislature's intent []." *Vaugh*, 2017 WY 29, ¶ 9, 391 P.3d at 1091 (citing *KP v. State*, 2004 WY 165, ¶ 27, 102 P.3d 217, 225 (Wyo. 2004)). The plain language of Wyoming Statute 14-6-223(c) shows the legislature intended to place limitations on a juvenile's statutory right to a jury trial: "Demand for a jury trial must be made to the court not later than ten (10) days after the party making the demand is advised of his right to a jury trial . . . Failure of a party to demand a jury is a waiver of this right."

[¶18] JP had a statutory right, not a constitutional right, to demand a jury trial at the adjudicative stage. Although JP was properly advised of his right to demand a jury trial and the deadline by which the demand needed to be made, he did not file a jury demand under Wyoming Statute § 14-6-223(c) within the ten-day statutory period. Therefore, he waived his right to a jury trial. *See* Wyo. Stat. Ann. § 14-6-223(c); *Matter of GP*, 679 P.2d 976, 984 (Wyo. 1984) (holding failure to file timely jury demand in a parental-termination action was a waiver of right to jury trial); *Baldwin v. McDonald*, 156 P. 27, 32 (Wyo. 1916) (holding failure to file a timely jury demand in a foreclosure action was a waiver of right to jury trial).

[¶19] Although JP's case was tried by the court rather than a jury, this does not necessarily mean he was deprived of due process or a fundamental right. The applicable due process standard in juvenile proceedings is fundamental fairness. *McKeiver*, 403 U.S. at 543, 91 S. Ct. at 1985. This standard places an emphasis on factfinding procedures and requires notice, counsel, confrontation, cross-examination, and holding the State to the correct standard of proof. *Id.* However, while there is much to be said for the jury system, it is not a "necessary component of accurate fact finding," and the Supreme Court of the United States has been "content to pursue other ways for determining facts." *Id.* Courts have refused to find every trial "held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would by a jury." *McKeiver*, 403 U.S. at 543, 91 S. Ct.

7

at 1985 (citing *Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S. Ct. 1444, 1452, 20 L. Ed. 2d 491 (1968)).  In fact, the Supreme Court of the United States has stated "a jury [trial] is not a necessary part even of every criminal process that is fair and equitable." *Id.* at 547, 91 S. Ct. at 1987 (citing *Duncan*, 391 U.S. at 149–50, n. 14, 158, 88 S. Ct. at 1447, 1452).

[¶20]  JP's bench trial satisfied the due process standard of fundamental fairness.  The delinquency petition gave JP notice of the allegations against him.  JP was represented by counsel at the adjudicatory hearing.  He was able to confront and cross-examine all the witnesses, and the State was required to prove the allegations beyond a reasonable doubt.  JP was given a meaningful opportunity to be heard, and his case was tried by a competent factfinder. *Matter of GP*, 679 P.2d at 988.

[¶21]  The evidence presented at the hearing supports the juvenile court's conclusion JP committed a delinquent act.  At the bench trial, the juvenile court heard the testimony of nine witnesses.  LH testified in detail about the events leading up to the sexual assault.  When describing the sexual assault, LH testified that she woke up to find JP's hand down her shorts, and his fingers were inside of her vagina.  When JP stopped touching her, LH left and called 911 as soon as she was far enough away that he could not hear her.  The 911 call was admitted at the trial without any objection from the defense.  LH was upset, crying, and having difficulty speaking throughout this call.  Other witnesses confirmed LH was upset, crying, and hysterical when she told them about the assault.  JP denied sexually assaulting LH.  As is often the situation in sexual assault cases, the case came down to whose testimony the factfinder believed.  The juvenile court found LH's testimony credible because it was supported by corroborating evidence from other witnesses, and her demeanor on the 911 call was consistent with someone who had just been sexually assaulted.

[¶22]  JP raised no complaint about his counsel's performance at the bench trial.  He has not pointed to any ruling the juvenile court made that deprived him of a fair trial, nor has he pointed to anything that would undermine our confidence in the outcome or indicate the result of his bench trial is not reliable.  JP failed to establish a reasonable probability that the outcome would have been different if this same evidence had been presented to a jury rather than the juvenile court.  Therefore, JP has failed to affirmatively prove prejudice under the *Strickland* test.

[¶23]  Although JP did not use the words "presumed prejudice" in his brief, his argument that the denial of a jury trial was in itself prejudicial could be construed as asking us to find prejudice should be presumed when counsel fails to file a timely jury demand in a juvenile case.  The State recognizes there are a few instances where courts have presumed prejudice, but it asserts we should not do so here.

[¶24]  We have recognized a "narrow class of cases where the 'circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is

unjustified.'" *Sincock v. State*, 2003 WY 115, ¶ 38, 76 P.3d 323, 337 (Wyo. 2003) (quoting *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)). Prejudice may be presumed when the deficiencies in trial counsel's performance "so prejudice the right of a defendant to a fair trial that they will serve to support a conclusion that reasonably effective assistance was not afforded." *Mellot v. State*, 2019 WY 23, ¶ 31, 435 P.3d 376, 387 (Wyo. 2019) (quoting *King v. State*, 810 P.2d 119, 122 (Wyo. 1991)).

[¶25]  We have only presumed prejudice in a few, rare circumstances. *See, e.g.*, *Asch v. State*, 2003 WY 18, ¶ 43, 62 P.3d 945, 959 (Wyo. 2003) (presuming prejudice when counsel failed to interview multiple witnesses and secure their presence at trial); *Shongutsie v. State*, 827 P.2d 361, 367 (Wyo. 1992) (presuming prejudice when multiple co-defendants were represented by the same attorney without an appropriate waiver); *King*, 810 P.2d at 122 (presuming prejudice due to counsel's unjustified failure to investigate the case). Although we have been asked to presume prejudice in other cases, we have consistently declined to do so. *See Steplock*, 2022 WY 12, ¶ 27, 502 P.3d at 938 (citing *Sides v. State*, 2021 WY 42, ¶ 35, 483 P.3d 128, 137–38 (Wyo. 2021); *Leners v. State*, 2021 WY 67, ¶ 25, 486 P.3d 1013, 1018–19 (Wyo. 2021); *Fairbourn v. State*, 2020 WY 73, ¶¶ 63–64, 465 P.3d 413, 428 (Wyo. 2020)).  JP has not shown this is one of the rare cases where prejudice should be presumed.  Although JP's counsel failed to file a timely jury demand, JP still received a fair trial.  Therefore, we decline to presume prejudice in this case.

## CONCLUSION

[¶26]  The failure to establish prejudice dooms an ineffective assistance of counsel claim. JP failed to show the outcome of his case would have been different if it had been tried to a jury, and he failed to demonstrate this is one of the rare circumstances where prejudice should be presumed.  The district court's order adjudicating JP as a delinquent and the corresponding order of disposition are affirmed.