# THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 153

OCTOBER TERM, A.D. 2022

December 6, 2022

IN THE MATTER OF THE TERMINATION
OF PARENTAL RIGHTS TO:  RVR; KAR;
and RLR, minor children,

FRANK LANDIS ROBERTS, IV,

Appellant
(Respondent),

v.

STATE OF WYOMING, DEPARTMENT OF
FAMILY SERVICES,

Appellee
(Petitioner).

S-22-0032

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*

Donna D. Domonkos and Brittany N. Thorpe of Domonkos & Thorpe, LLC, Cheyenne, Wyoming.  Argument by Ms. Domonkos.

*Representing Appellee:*

Bridget L. Hill, Attorney General: Misha E. Westby*, Deputy Attorney General; Shawnna M. Lamb, Senior Assistant Attorney General; Christina F. McCabe, Senior Assistant Attorney General.  Argument by Ms. Lamb.

*Guardian ad Litem:*

Joseph R. Belcher, Director, Wyoming Office of the Guardian ad Litem. Appearance by Mr. Belcher.

*\* An Order Allowing Withdrawal of Counsel was entered on July 26, 2022.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   Frank Landis Roberts, IV, (Father) appeals from the district court's order granting the Wyoming Department of Family Services' (DFS) petition to terminate his parental rights.  He asserts he received ineffective assistance of counsel, and the district court abused its discretion when it denied his motion to set aside the entry of default.  We affirm.

## ISSUES

[¶2]   Father presents two issues, which we rephrase as follows:

> I.     Does Wyoming Statute § 14-2-318(a) create a statutory right to effective assistance of counsel in termination of parental rights cases?
>
> II.    Did the district court abuse its discretion when it denied Father's oral motion to set aside the entry of default?

## FACTS

[¶3]   At 2:45 a.m. on April 11, 2019, Father called the Cheyenne Police Department to report his three young children, RVR, KAR, and RLR, were out of control.  When an officer responded, he discovered the home was filthy and in disarray.  The officer arrested Father on an outstanding warrant and took the children into protective custody because there were no other adults in the home who could provide care for the children.[1]  The State filed a neglect petition against Father that same day.  The details of the underlying neglect case are set forth in *In re RR*, 2021 WY 85, 492 P.3d 246 (Wyo. 2021), and will not be recapped here.

[¶4]   On February 11, 2021, DFS filed a petition to terminate Father's parental rights pursuant to Wyoming Statute § 14-2-309(a)(iii)[2] and (a)(v).[3]  DFS served Father with the petition and summons on March 26, 2021.  The summons informed Father he needed to answer the petition within 20 days or judgment by default could be taken against him.

---

[1] The children's mother, Bryanna Salinas, had not resided with the children since August 2017.

[2] Under Wyoming Statute 14-2-309(a)(iii), the parent-child legal relationship may be terminated if DFS proves by clear and convincing evidence "the child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent[.]"

[3] Under Wyoming Statute 14-2-309(a)(v), the parent-child legal relationship may be terminated if DFS proves by clear and convincing evidence "the child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]"

1

Father did not file a timely response, and on April 16, 2021, DFS asked the Clerk of Court to enter default against Father. The Clerk entered default against Father that same day. DFS requested a default hearing on the petition against Father, which was set for June 16, 2021.

[¶5]    On April 26, 2021, Father filed a pro se letter requesting a court-appointed attorney and indicating his desire to oppose the petition. Father filed his financial affidavit two days later. This affidavit indicated Father was homeless and unemployed. Court-appointed counsel entered an appearance on Father's behalf on April 30, 2021.

[¶6]    On May 19, 2021, Father's counsel filed a request for an extension of time to respond to the petition, which included a proposed response he had drafted on Father's behalf. This pleading indicated counsel's attempts to contact Father were unsuccessful, but based on Father's pro se letter, it appeared Father wanted to defend against the petition. DFS objected to Father's request for an extension of time on the grounds that Father had not filed a motion to set aside the entry of default under Rule 55 of the Wyoming Rules of Civil Procedure (W.R.C.P.). The district court denied Father's request. The default hearing was continued twice, once at the request of the Guardian Ad Litem (GAL) and once at the request of DFS. It was ultimately heard on July 20, 2021.

[¶7]    At the beginning of the default hearing, the district court explained the procedural posture of the case and how it intended to proceed:

> THE COURT: Okay. So at this point just so everybody knows where we are, the Department of Family Services has obtained an entry of default from the Clerk of District Court. Has since asked for a default judgment hearing which is the purpose of today's hearing. There has been no move or motion -- written motion to set aside the entry of default. So we're going to proceed with the hearing.
>
> To the extent that Mr. Roberts wants to participate today, the [c]ourt will allow some cross-examination and closing argument, but not the presentation of any evidence by Mr. Roberts in accordance with the case law and the fact that he failed to answer timely and has been defaulted by entry of default.

[¶8]    When asked if he objected to this procedure, Father's counsel stated:

> [FATHER'S COUNSEL]: Your Honor, I had been prepared to have Mr. Roberts take the stand to testify as to the events that occurred, and I still would like to do that. However, if the

2

[c]ourt decides that isn't appropriate then I think we can do most of it just from the documents that have been filed. But I prefer to put him on the stand.

[¶9] The district court said it would take up that issue when it was Father's turn to present evidence, but it reminded Father a short time had been set aside for the hearing because it was not "a full-blown trial." In his opening statement, Father's counsel argued defaulting a parent in a termination of parental rights case was "the most severe ruling the [c]ourt could grant," and Father should be given a chance to defend against the petition. He also argued affording Father that opportunity would not create an undue or extra burden on DFS because the case against the mother was still set for trial.

[¶10] DFS offered the testimony of the caseworker in the underlying juvenile neglect action. She testified Father did not comply with or complete any of the goals in his case plan. She also testified in detail about the services DFS offered to Father and the children throughout the case. Father was resistant to several of these services, and some of the service providers eventually refused to provide services for him due to his aggressive and defiant behavior. Despite DFS's efforts, Father was evicted from his apartment, and he failed to tell DFS where he was living or if he was employed. The caseworker stated she was concerned Father would be unable to meet the children's ongoing needs if they were returned to his care. She opined placing the children back with Father would seriously jeopardize their health and safety.

[¶11] When given the opportunity to cross-examine the caseworker, Father's counsel asked the district court to allow Father to testify that "there [was] no culpable conduct on his part for failing to answer." The district court reiterated the purpose of the hearing was to determine if DFS could present clear and convincing evidence that Father's parental rights should be terminated, and that termination was in the best interests of the children. The district court noted the testimony Father's counsel wished to present appeared to "go to the question of whether the [c]ourt should set aside entry of default," but the court did not have before it "any motion to set aside entry of default." The district court found that setting aside the default was not properly before the court, and it could only consider DFS's request for default judgment. The district court denied counsel's request to present this testimony. Father's counsel then informed the district court he had not filed a motion to set aside the entry of default because he believed the purpose of the hearing was "to determine whether or not the default should go through or be set aside." The district court did not reconsider its ruling. After Father's counsel cross-examined the caseworker, there was not enough time to allow DFS to finish presenting its evidence, and the district court indicated it would reconvene the hearing at a later date.

[¶12] Later that day, in response to the district court's comments, Father's counsel filed a written motion to set aside the entry of default. This motion asserted Father made numerous attempts to obtain counsel, although it did not list specific dates for those

3

attempts. The motion admitted Father had not asked the district court to appoint counsel for him until after default had been entered. Father argued the entry of default was not due to his culpable conduct because he had done everything he could to obtain counsel. He asserted DFS would not be prejudiced because the petition against the children's mother was set for trial, and DFS would have to present similar facts at that trial. Father also asserted he had a meritorious defense, although he did not set forth any details about that defense. DFS objected to this motion, claiming Father failed to show he was entitled to relief under W.R.C.P. 55(c).

[¶13] The default hearing was set to reconvene at 9:00 a.m. on October 22, 2021. DFS wanted the district court to hear Father's motion to set aside the entry of default before the default hearing reconvened, and it filed a request for a setting on the motion when it realized Father's counsel had not done so. On October 13, 2021, the district court issued an order setting the hearing on the motion to set aside the entry of default for 8:30 a.m. on October 22, 2021.

[¶14] Neither Father nor his counsel was present when the district court convened the hearing at 8:30 a.m. The district court heard argument on Father's motion, even though he and his counsel were not present. DFS asked the district court to deny the motion because it did not "contain sufficient grounds for this [c]ourt to set aside the entry of default." After hearing argument from DFS and the GAL, the district court denied the motion:

> [THE COURT]: Based on what I heard, based on the fact that neither Mr. Roberts nor [his counsel] are present to make any sort of argument beyond what the written motion states, nor to put on any evidence in regards to the three factors that are generally applied in a motion to set aside entry of default, the [c]ourt will deny the motion to set aside the entry of default.
>
> Mr. Roberts has not demonstrated that the plaintiff in this matter, petitioner in this matter will not be prejudiced by setting aside entry of default. Maybe Mr. Roberts has a meritorious defense, but that has not been demonstrated today.
>
> And as far as his culpable conduct, certainly the evidence reflects he didn't file anything until a month after the entry of default was granted by the Clerk of District Court. And his excuses that were provided in there aren't sufficient to demonstrate that I should set aside entry of default at this point.
>
> And, again, I'll stress neither [his counsel] nor Mr. Roberts are present for their motion.

4

[¶15]  Father's counsel arrived at approximately 8:46 a.m.[4]  This was after the district court issued its ruling on the motion to set aside default and placed the caseworker back under oath so DFS could begin its redirect examination.  Father failed to appear at any time during the hearing.

[¶16]  The caseworker again testified about the services DFS and other agencies had provided for Father.  She also testified Father was very abusive towards her and other members of the team, which led to some providers refusing to work with Father.  DFS then presented evidence from the new caseworker, who took over the case in September 2021.  She testified Father had recently participated in a family planning meeting, where she reminded him about the default hearing.  Father did not tell her where he was living.  He did tell her he had obtained a part-time job as a dishwasher, but he did not tell her who his employer was or how much money he was earning.  She opined it would be in the best interest of the children to terminate Father's parental rights and proceed with adoption.  After DFS rested and the GAL indicated he did not intend to present any evidence, the district court renewed its ruling that Father was not going to be allowed to present any evidence due to the entry of default.

[¶17]  In his closing argument, Father's counsel stated he told Father to be at the hearing at 9:00 a.m., and counsel did not know why Father was not present.  Father's counsel stated his client was difficult to get ahold of, and "[h]is poverty situation [was] as bleak as any [he had] ever seen."  Counsel initially argued it would be a tragedy to take Father's children away simply because he was poor.  However, he later admitted DFS presented "a lot of evidence" demonstrating Father failed to complete his case plan.

[¶18]  The district court granted DFS's motion for default judgment and terminated Father's parental rights to all three children.  It found DFS presented clear and convincing evidence Father's rights should be terminated pursuant to Wyoming Statute § 14-2-309(a)(iii) and (a)(v).  The district court further found terminating Father's parental rights was in the best interests of the children.  The district court issued a written order terminating Father's parental rights and a separate order denying Father's motion to set aside default.  This appeal timely followed.

## DISCUSSION

### I.    *Does Wyoming Statute § 14-2-318 create a statutory right to effective assistance of counsel?*

[¶19]  Father asserts Wyoming Statute § 14-2-318(a) (LexisNexis 2021) secures his right

---

[4] Toward the end of the hearing, Father's counsel was given an opportunity to explain why he had been late.  Father's counsel explained he had received the October 13, 2021, notice of setting, but he failed to notice the time had been changed to 8:30 a.m.

5

to counsel in a termination of parental rights case, and this statutory right to counsel includes a right to effective assistance of counsel. Father's claim requires us to interpret the statute.

[¶20] "When interpreting statutes, 'we seek the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute,' giving effect to every word, clause, and sentence." *In re BC-K*, 2022 WY 80, ¶ 11, 512 P.3d 634, 638 (Wyo. 2022) (quoting *Bernal-Molina v. State*, 2021 WY 90, ¶ 13, 492 P.3d 904, 908 (Wyo. 2021)). "Where there is plain, unambiguous language used in a statute there is no room for construction." *Id.* (quoting *Schneider v. State*, 2022 WY 31, ¶ 9, 505 P.3d 591, 594 (Wyo. 2022)). None of the parties in this case asserted Wyoming Statute § 14-2-318(a) is ambiguous.

[¶21] Wyoming Statute § 14-2-318(a) reads:

> The court may appoint counsel for any party who is indigent. Indigency shall be established by written affidavit signed and sworn to by the party or sworn testimony made a part of the record of the proceedings. The affidavit or sworn testimony shall state that the party is without sufficient money, property, assets or credit to employ counsel in his own behalf. The court may require further verification of financial condition as it deems necessary.

Father did not cite to any Wyoming authority interpreting this statute as creating a mandatory right to counsel. Instead, Father relied on a case from Colorado, *People ex rel. A.R.*, 459 P.3d 645 (Colo. App. 2018), which interpreted a statute that is fundamentally different from Wyoming's. Colorado's statute specifically provides: "After a motion for termination of a parent-child legal relationship is filed . . . the [] parents shall be advised of the right to counsel if not already represented by counsel of record; and counsel shall be appointed in accordance with the provisions of section 19-1-105. . . ." Colo. Rev. Stat. § 19-3-602(2) (2021).

[¶22] Unlike the Colorado statute, Wyoming Statute § 14-2-318(a) uses the word "may" not "shall." "We have, in a number of instances, noted that the term 'may' connotes permissive authority and does not structure a mandatory requirement." *In re WJH*, 2001 WY 54, ¶ 14, 24 P.3d 1147, 1152–53 (Wyo. 2001) (quoting *Rawson v. State*, 900 P.2d 1136, 1138 (Wyo. 1995)). We have previously held Wyoming Statute § 14-2-318(a) gives the district court the discretion to appoint counsel, but it does not require the court to do so. *In re CC*, 2004 WY 167, ¶¶ 12–15, 102 P.3d 890, 894–95 (Wyo. 2004). We have also previously upheld district courts' decisions not to appoint counsel in termination of parental rights cases. *Id.* at ¶ 15, 102 P.3d at 895; *see also In re KMM*, 957 P.2d 296, 298 (Wyo. 1998).

6

[¶23] This Court has only recognized a right to effective assistance of counsel in criminal cases and at the adjudicatory stage of juvenile delinquency proceedings. *See, e.g., Delgado v. State*, 2022 WY 61, ¶¶ 12–13, 509 P.3d 913, 919 (Wyo. 2022); *In re JP*, 2022 WY 94, ¶ 12, 514 P.3d 785, 789 (Wyo. 2022). In both criminal and juvenile cases, the right arises from the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 §10 of the Wyoming Constitution rather than from any statute. *Delgado*, ¶ 12, 509 P.3d at 919; *In re JP*, ¶ 12, 514 P.3d at 789. Termination of parental rights cases are civil matters, not criminal matters. *In re TJH*, 2021 WY 56, ¶ 12, 485 P.3d 408, 413 (2021) (citations omitted). Father did not cite to any Wyoming authority holding a litigant has a statutory right to effective assistance of counsel in a civil case. Because Wyoming Statute § 14-2-318(a) does not create a mandatory right to counsel, we conclude it does not create a statutory right to effective assistance of counsel in termination of parental rights cases.

[¶24] Father did not assert the right to effective assistance of counsel in a termination of parental rights case arises under either the United States Constitution or the Wyoming Constitution. "This Court 'will not frame issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation.'" *Ross v. State ex rel. Dept. of Workforce Servs.*, 2022 WY 11, ¶ 24, 503 P.3d 23, 31 (Wyo. 2022) (quoting *Woods v. State*, 2017 WY 111, ¶ 18, 401 P.3d 962, 969 (Wyo. 2017)). Therefore, we do not address whether such a right exists under either constitution.

### II. Did the district court abuse its discretion when it denied the oral motion to set aside the entry of default?

[¶25] "Because a termination of parental rights proceeding is a civil matter, the Wyoming Rules of Civil Procedure apply." *In re EMM*, 2018 WY 36, ¶ 10, 414 P.3d 1157, 1159 (Wyo. 2018) (citing *In re HLL*, 2016 WY 43, ¶¶ 22–24, 372 P.3d 185, 189–90 (Wyo. 2016)). W.R.C.P. 55(c) states: "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." When determining whether to set aside an entry of default, the district court considers three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the culpable conduct of the defendant led to the default." *In re EMM* at ¶ 11, 414 P.3d at 1160 (quoting *In re HLL*, ¶ 36, 372 P.3d at 192). "As the proponent of the motion, [Father] had the burden of proving [he was] entitled to relief." *Id.* at ¶ 8, 414 P.3d at 1159 (quoting *In re HLL*, ¶ 33, 372 P.3d at 192).

[¶26] Father only challenges the district court's decision to deny his "oral" motion to set aside default, and he does not assert the district court erred when it subsequently denied his written motion. DFS contends the district court appropriately denied the "verbal" motion because Father failed to establish good cause to set aside the default. We review a district court's determination as to whether good cause exists to set aside an entry of default for an abuse of discretion. *In re EMM*, ¶ 8, 414 P.3d at 1159 (quoting *In re HLL*, ¶ 32, 372 P.3d at 192). We will not disturb the decision unless it was "clearly wrong." *Id.* (quoting *In re*

*HLL*, ¶ 32, 372 P.3d at 192). "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *In re AA*, 2021 WY 18, ¶ 33, 479 P.3d 1252, 1261 (Wyo. 2021) (quoting *MMM v. AMMJ*, 2018 WY 60, ¶ 10, 419 P.3d 490, 493 (Wyo. 2018)).

[¶27]   Father admits his counsel never used "the magic words of 'I move the [c]ourt for an Order Setting Aside Default,'" but he argues counsel put the district court on notice that he wanted to be heard on that issue. At the beginning of the hearing on July 20, 2021, the district court informed the parties the purpose of the hearing was to determine if default judgment should be entered, and no motion to set aside the entry of default had been filed. Although Father's counsel indicated he was prepared to have his client testify about the events that occurred, he did not make an oral motion to set aside the entry of default at that time. After the district court received evidence from the DFS caseworker in support of entering default judgment, Father's counsel asked to call Father to the stand "to show that there [was] no culpable conduct on his part for failing to answer." The district court indicated that issue was not properly before it because there was no pending motion to set aside the default. Father's counsel admitted he did not file such a motion prior to the hearing, but he believed the purpose of the hearing was to decide if the default should be set aside. He then renewed his request to call Father to testify about his lack of culpable conduct. When asked if he wanted to put anything else on record regarding this issue, Father's counsel declined to do so.

[¶28]   W.R.C.P. 7(b)(1)(A) requires motions to "be in writing unless made during a hearing or trial[.]" Assuming the statements made by Father's counsel constituted a motion "made during a hearing," we conclude he failed to meet his burden of showing good cause existed to set aside the entry of default. Although Father's counsel indicated there might be a question about the culpable conduct factor, he did not discuss whether setting aside the entry of default would prejudice DFS. In his opening statement, he did opine there would not be any "undue burden or extra burden" on DFS if Father were afforded the opportunity to defend against the petition. "Undue burden" is not the standard we apply in default cases. Father had the burden of showing DFS would not be prejudiced by setting aside the entry of default. *In re EMM*, 2018 WY 36, ¶ 11, 414 P.3d at 1160. We have held setting aside an entry of default can prejudice DFS "because the permanent placement of [the children] would be delayed." *In re HLL*, ¶ 37, 372 P.3d at 192. The children in this case had already been in DFS custody for 27 months as of July 2021. Father failed to make any showing that setting aside the entry of default would not further delay establishing permanency for the children. Father also had the burden of establishing he had a meritorious defense. *In re EMM*, ¶ 11, 414 P.3d at 1160. Father's counsel did not offer any argument or make an offer of proof to show Father had a meritorious defense to the allegations in the petition. Because Father did not meet his burden of showing he was

8

entitled to relief under W.R.C.P. 55(c), the district court did not abuse its discretion when it denied the oral motion.[5]

## **CONCLUSION**

[¶29]  Wyoming Statute § 14-2-318(a) does not create a statutory right to counsel or a statutory right to effective assistance of counsel in termination of parental rights cases. Father failed to meet his burden of showing he was entitled to relief under W.R.C.P.55(c), and the district court did not abuse its discretion when it denied his motions to set aside the entry of default.  Affirmed.

---

[5] Although Father's brief does not challenge the district court's denial of his written motion to set aside the entry of default, we note that his written motion suffered from many of the same deficiencies as his oral motion.  Father's written motion claimed the entry of default did not result from his culpable conduct because he made multiple attempts to obtain counsel.  The summons advised Father he had 20 days to respond to the petition, but he did not file a response within that time, and he waited until after default had been entered to request a court-appointed attorney.  We have held a parent's failure to timely respond to the petition constitutes culpable conduct. *In re EMM*, 2018 WY 36, ¶ 15, 414 P.3d at 1161.  "[I]gnorance of the law or rules of procedure does not justify relief from an entry of default." *Id.* (citing *In re HLL*, 2016 WY 43, ¶ 35, 372 P.3d at 192).  Father's written motion also failed to establish DFS would not be prejudiced by setting aside the default because he again failed to show setting aside the default would not delay establishing permanency for the children. *See In re HLL*, ¶ 37, 372 P.3d at 192.  Although Father's written motion made a general assertion that he had a meritorious defense, it did not set forth any details pertaining to that defense.  By Father's own admissions, he was homeless and unemployed at the time he asked for court-appointed counsel.  At the portion of the hearing that took place before the written motion was filed, DFS presented evidence Father had been unable to provide a safe environment for the children or meet their physical, emotional, nutritional, and medical needs.  Father's motion offered nothing to contradict this evidence.  He failed to meet his burden of proving he had a meritorious defense.  Because Father failed to meet his burden of establishing any of these factors, his written motion failed to establish good cause for setting aside the entry of default under W.R.C.P. 55(c).

9